UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SIK YUE LEE, A# 037226303,

      Petitioner,

v.                                        Case No. 2:25cv535

JEFFREY CRAWFORD, *et al.*,

      Respondents.

## REPORT AND RECOMMENDATION

Pending before the Court is a Petition for a Writ of Habeas Corpus submitted pursuant to 28 U.S.C. § 2241 ("the Petition"), ECF No. 1.  Respondents oppose granting the Petition.  ECF No. 12.  This case was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(A)–(B) and Rule 72(b) of the Federal Rules of Civil Procedure.  For the foregoing reasons, the undersigned **RECOMMENDS** that the Petition, ECF No. 1, be **GRANTED**, and that Petitioner be immediately released from custody.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court received and filed the Petition on August 27, 2025.  *Id.* at 1.  Petitioner Sik Yue Lee ("Petitioner"), a native of China, entered the United States on August 19, 1980, as a lawful permanent resident.  ECF No. 12, attach. 1 at 2.  On July 17, 1990, he was convicted in Richland County Court of General Sessions in South Carolina of Trafficking in Cocaine in violation of South Carolina Code of Laws § 44-53-370(e)(2)(f).  *Id.*  Petitioner was sentenced to twenty-five years' imprisonment.  *Id.*

As a result of that conviction, on October 12, 1990, Petitioner was issued an Order to Show Cause charging him as deportable under former § 241(a)(11) of the Immigration and Nationality

Act ("INA"). *Id.* On February 19, 1991, Petitioner was issued a Form I-261 lodging an additional charge of deportability under INA § 241(a)(4)(B). *Id.* Petitioner applied for a waiver of inadmissibility pursuant to INA § 212(c). *Id.* On July 23, 1992, an Immigration Judge denied Petitioner's requested waiver and ordered him deported to China. *Id.* Petitioner appealed that decision to the Board of Immigration Appeals ("BIA"), which dismissed his appeal on December 8, 1992. *Id.*

On June 6, 2003, Petitioner was taken into custody by U.S. Immigration and Customs Enforcement ("ICE"). *Id.* On June 1, 2004, Petitioner filed a petition for writ of habeas corpus. *Id.* On February 11, 2005, Petitioner was released on an Order of Supervision. *Id.* The Western District of Louisiana subsequently dismissed his habeas petition without prejudice as moot. *Id.*; *see Lee v. Ashcroft*, No. 3:05-cv-107, ECF No. 16 (W.D. La. June 6, 2005).

Approximately twenty years later, on June 21, 2025, ICE issued a Warrant of Removal/Deportation. ECF No. 12 at 5. That same day, officers from ICE Baltimore arrested Petitioner and took him into custody. ECF No. 12, attach. 1 at 2. On June 24, 2025, Petitioner was transferred to Farmville Detention Center in Farmville, Virginia. *Id.* On July 10, 2025, Petitioner completed travel document request forms, and on July 15, 2025, ICE submitted a Travel Document Request to the Chinese Embassy. *Id.* Also on July 15, 2025, ICE issued Petitioner a "Warning for Failure to Depart" accompanied by a "Notice to Alien of File Custody Review," which communicated that ICE would review Petitioner's case for consideration of release on an Order of Supervisions, scheduled to occur around September 19, 2025. ECF No. 12 at 5.

The instant Petition was docketed on August 27, 2025,[1] ECF No. 1, and Petitioner paid the filing fee on September 15, 2025, ECF No. 6. On September 18, 2025, this Court ordered

---

[1] Petitioner declared that he mailed the Petition on August 12, 2025. ECF No. 1 at 9. However, it was received by the Court on August 15, 2025, and docketed on August 27, 2025. *Id.* at 15.

2

Respondents to respond within sixty days. ECF No. 7. That same day, Enforcement and Removal Operations ("ERO") Washington conducted a Post-Order Custody Review and determined that Petitioner failed to demonstrate that he will not pose a danger to the community if released. ECF No. 12, attach. 1 at 2. The decision to continue detention was served on Petitioner on September 24, 2025. *Id.*

On October 5, 2025, ICE submitted an updated Travel Document Request to the Chinese Embassy. *Id.* On November 17, 2025, ERO Washington completed a Notice of Revocation of Release, which informed Petitioner that his Order of Supervision was revoked and that he would continue being detained under ICE custody. *Id.* That same day, the Respondents filed their response to the Petition. ECF No. 12. In their response, Respondents indicated that ERO Washington "intends to serve that Notice [of Revocation of Release] on Petitioner on November 18, 2025, and to interview Petitioner in conjunction with the same on November 20, 2025." *Id.* at 6. Petitioner remains in ICE custody in Farmville Detention Center. *See Online Detainee Locator System*, U.S. Immigr. and Customs Enf't, https://locator.ice.gov/odls/#/search (last visited Feb. 27, 2026) (under "Search by A-Number," enter Petitioner's A-Number; then choose "China, Peoples Republic of" from Country of Birth dropdown; then click "Search by A-Number").

Petitioner contends that his continued detention for more than six months following the entry of his final order of deportation violates the Due Process Clause of the United States Constitution and the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). ECF No. 1 at 6. He argues that his removal is not reasonably foreseeable, asserting that although he has cooperated with ICE's efforts to secure travel documents, ICE has not effectuated his deportation. *Id.* He requests this Court to order his immediate release or, alternatively, a bond hearing before an Immigration Judge. *Id.* at 7–8. Petitioner requests that his bond hearing place

3

the burden "on the government to prove, by clear and convincing evidence, that [Petitioner is] currently a danger or a flight risk." *Id.* at 7.

The Respondents filed an Opposition to the Petition on November 17, 2025, along with the Declaration of Joseph Simon, Deputy Field Officer Director at ICE. ECF No. 12; ECF No. 12, attach. 1. In arguing that the Petition should be dismissed, Respondents make four arguments: (1) Petitioner's detention complies with *Zadvydas* because it has not exceeded six months and thus remains within the presumptively reasonable period set by *Zadvydas*; (2) Petitioner cannot demonstrate that there is no significant likelihood of his removal in the foreseeable future; (3) Petitioner requests additional due process than what is required under *Zadvydas*; and (4) even if Petitioner was entitled to additional due process, the relevant tests do not require the relief he seeks. *Id.* at 7–19.

On February 11, 2026, the Court directed Respondents to file a supplemental response addressing what steps ICE has taken since November 17, 2025, to effectuate Petitioner's removal to China. ECF No. 13. On February 25, 2026, Respondents filed a Response along with the Declaration of Justin Richardson, Supervisory Detention and Deportation Officer at ICE, ERO. ECF No. 14; ECF No. 14, attach. 1. Respondents advise that on October 15, 2025, ERO Headquarters submitted Petitioner's biographic information to immigration officials of China for nationality verification, which remains pending as of February 12, 2026. ECF No. 14, attach. 1 at 2. Respondents confirmed that ERO has not taken further action while awaiting China's response. *Id.* Respondents also confirmed that ERO has not received a response from the Chinese government regarding its July 2025 Travel Document Request but expects to receive a response to the October 2025 nationality verification. *Id.* Respondents state that "once China immigration officials confirm nationality, that the officials will notify ERO and the embassy that the Travel

4

Document Request can then be submitted to the embassy." *Id.* Finally, Respondents state that there is "not a consistent timeframe to rely on" to determine when China's government would respond to ICE's requests. *Id.* Thus, "ICE is not in a position to make a reliable estimate about Petitioner's timeframe for removal." ECF No. 14 at 2.

## II. DISCUSSION

Pursuant to 28 U.S.C. § 2241, federal courts are authorized to issue a writ of habeas corpus to one who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The writ of habeas corpus has traditionally 'served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.'" *Luna Sanchez v. Bondi*, No. 1:25-CV-018888, 2025 WL 3191922, at *2 (E.D. Va. Nov. 14, 2025) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Habeas is "regularly invoked on behalf of noncitizens." *Id.* (quoting *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382, 2025 WL 2783800, at *3 (E.D. Va. Sept. 30, 2025)) (additional citations omitted).

Pursuant to the Due Process Clause of the Fifth Amendment, no *person* shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause extends to *all* persons, including "aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "As the Supreme Court has recognized, 'habeas corpus in the federal courts provides a mode for the redress of denials of due process of law. Vindication of due process is precisely its historic office.'" *Castaneda v. Perry*, 95 F.4th 750, 762 (4th Cir. 2024) (citing *Fay v. Noia*, 372 U.S. 391, 402 (1963), *overruled on other grounds by Wainwright v. Sykes*, 433 U.S. 72 (1977)).

After an order of removal becomes final, the Attorney General "shall detain the alien" during the ninety-day removal period established under 8 U.S.C. § 1231(a)(2). *Zadvydas v. Davis*,

533 U.S. 678, 683 (2001). The Supreme Court in *Zadvydas* held that the INA contains an implicit limitation of this detention period past ninety days: detention is presumptively reasonable for up to six months. *Id.* After that six-month period has elapsed, if the alien[2] demonstrates "that there is no significant likelihood of removal in the reasonably foreseeable future," then the Government must respond with evidence sufficient to rebut that showing. *Id.* The six-month presumption does not require automatic release once an alien's detention reaches six months; rather, an alien may remain detained until it is determined that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.*

### 1. Presumptively Reasonable Period of Detention

First, Respondents argue that Petitioner's detention complies with *Zadvydas* because Petitioner has not been detained for six months. ECF No. 12 at 7–8. Respondents argue that because Petitioner has not been detained for six months, under *Zadvydas*, his detention is presumptively reasonable. *Id.*

Here, Petitioner's current period of post-final-order detention began on June 21, 2025—upon his arrest by ICE—but the instant Petition challenging his detention under *Zadvydas* was filed in August 2025, fewer than two months later. *Id.* To that extent, Respondents correctly observe that Petitioner could not, at the time of filing, argue that his detention was presumptively unreasonable because six months had not yet elapsed.

Respondents further argue that Petitioner's earlier period of ICE detention from June 6, 2003, to February 11, 2005, may not be aggregated with his current detention for purposes of the *Zadvydas* analysis. *Id.* The Court agrees. The weight of authority holds that when an alien is re-detained pursuant to a final order of removal, the six-month presumptively reasonable period runs

---

[2] Consistent with the INA's text, the Court uses the term "alien" here. *See* § 1101(a)(3) (defining an "alien" as "any person not a citizen or national of the United States").

from the date of the most recent detention, not from any prior period of custody. *See, e.g., Shaikh v. Lyons*, No. 1:25-cv-811, ECF No. 12 at 6–7 (E.D. Va. June 23, 2025); *Leybinski v. United States Immigration and Customs Enforcement*, No. 10 Civ. 5137, 2013 WL 132544, at *9 (S.D.N.Y. Jan. 8, 2013), *vacated as moot*, 553 F. App'x 108 (2d Cir. 2014); *Liu v. Carter*, No. 25-3036, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025); *Juarez v. Wolf*, No. C20-1660, 2021 WL 2323436, at *5 (W.D. Wash. May 5, 2021), *report and recommendation adopted*, 2021 WL 2322823 (W.D. Wash. June 7, 2021). Accordingly, Petitioner's detention in 2003–2005 does not factor into the present calculation.

That conclusion, however, does not end the inquiry. Although the Petition may have been filed before the six-month mark, the Court's review is not frozen in time as of the date of filing. Federal courts routinely consider post-filing developments in habeas proceedings challenging immigration detention. *See, e.g., Suri v. Trump*, 785 F. Supp. 3d 128 (E.D. Va. 2025) (holding that habeas jurisdiction was proper in the Eastern District of Virginia despite subsequent developments in the petitioner's detention). Moreover, the structure of *Zadvydas* itself confirms that the six-month period operates as a presumption, not a rigid jurisdictional bar that forces federal courts to consider only evidence existing on the date of the petition's filing. During the initial six months, detention is presumptively reasonable and the Respondent bears no burden to justify confinement. But that presumption may be overcome if a petitioner demonstrates that removal is not reasonably foreseeable—even within the six-month period. *See Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 375 (D. Md. 2025) ("During the six-month period, '[t]he presumption of reasonableness is the default,' and the government 'bears no burden to justify detention.' . . . But if a petitioner 'claim[s] and *prove[s]* . . . that his removal is not reasonably foreseeable'—including during the six-month period—the petitioner 'can overcome that presumption' and detention is no

7

longer authorized." (citation omitted)). Once six months have elapsed, the presumption goes away, and the burden shifts to the Respondent to rebut a showing that there is no significant likelihood of removal in the reasonably foreseeable future.

To hold that this Court may not consider the passage of time occurring during the pendency of a habeas petition would effectively insulate detention from review so long as the petition was filed before the six-month mark, even if detention later became prolonged and potentially unreasonable. Such an approach would be inconsistent with *Zadvydas*, which makes clear that the ultimate inquiry is whether continued detention remains reasonably necessary to effectuate removal.

Here, more than six months have elapsed since Petitioner was taken into ICE custody on June 21, 2025. His detention has therefore crossed the presumptively reasonable six-month threshold identified in *Zadvydas*. Accordingly, while Respondents are correct that Petitioner had not yet been detained for six months at the time he filed his Petition, that fact does not warrant dismissal. Because Petitioner has now been detained well beyond the six-month presumptive period, Respondents' argument regarding the Petition's prematurity no longer provides a basis to deny relief. The Court therefore proceeds to consider whether there is a significant likelihood of removal in the reasonably foreseeable future.

*2. Likelihood of Removal in the Reasonably Foreseeable Future*

Petitioner has now been detained for more than eight months following his arrest on June 21, 2025. Accordingly, the six-month presumption of reasonableness recognized in *Zadvydas* no longer insulates his continued confinement. The burden therefore shifts: if Petitioner provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, Respondents must come forward with evidence sufficient to rebut that showing.

*Zadvydas*, 533 U.S. at 701. Moreover, as *Zadvydas* makes clear, as the period of post-removal detention grows, what qualifies as the "reasonably foreseeable future" correspondingly shrinks. *Id.*

Here, Petitioner has met his initial burden, and Respondents' filings fail to rebut that showing. ICE submitted a Travel Document Request to the Chinese Embassy in July 2025 and an updated request in October 2025. In October 2025, ERO Headquarters also submitted Petitioner's biographic information to Chinese immigration officials for nationality verification. As of February 12, 2026—more than four months later—that request remains pending. Furthermore, ICE has indicated that "once China immigration officials confirm nationality, that the officials will notify ERO and the embassy that the Travel Document Request can then be submitted to the embassy," leaving it unclear whether ICE must then submit a *third* Travel Document Request once Petitioner's nationality is verified. ECF No. 14, attach. 1 at 2. Respondents acknowledge that they have received no response to either Travel Document Request, that nationality verification remains outstanding, and that ICE has taken no further action while awaiting a response. Critically, Respondents concede that there is "not a consistent timeframe" to rely on for a response from China and that ICE "is not in a position to make a reliable estimate" as to when Petitioner might be removed. ECF No. 14 at 2.

These representations demonstrate that there is no indication or plan in place to ensure that removal will occur in the reasonably foreseeable future. Respondents have identified no travel document that has issued, no scheduled interview with consular officials, no affirmative communication from Chinese authorities indicating progress, and no projected timeline for removal. Instead, the record reflects only pending requests and an open-ended expectation of a response at some unknown point.

Petitioner remaining indefinitely detained with no prospect of removal within a definite period is strong evidence that his removal is unlikely to occur in the reasonably foreseeable future. *Cf. Piao v. Lyons*, No. 1:25-CV-1725, 2025 WL 3046783, at *3 (E.D. Va. Oct. 31, 2025) (finding that removal was reasonably foreseeable where respondents represented that the petitioner's travel documents to China "were approved"); *Ali v. Barlow*, 446 F. Supp. 2d 604, 611 (E.D. Va. 2006) (finding that removal was reasonably foreseeable where, notwithstanding petitioner being in post-removal detention for only three months, ICE took "active steps to secure petitioner's removal," including interviewing the petitioner to identify an appropriate country of removal, obtaining petitioner's permission to travel to a third country, and requesting diplomatic assistance from the State Department); *Mattete v. Loiselle*, No. 2:06-CV-652, 2007 WL 3223304, at *4–5 (E.D. Va. Oct. 26, 2007) (finding that removal was reasonably foreseeable where any delay in removal was attributable to the petitioner's own obstruction, such as refusing for years to complete travel document applications, provide fingerprints and photographs, participate in consular interviews, and supplying false biographical information); *Menghua Wan v. Crawford*, No. 1:13-CV-1473, 2014 WL 970180, at *4 (E.D. Va. Mar. 12, 2014) (finding that removal was reasonably foreseeable where the petitioner's request for a judicial stay caused "any continuation of his detention" and where there was "no uncertainty about Petitioner's nationality or whether [China] will accept him if deportation proceedings resume"); *Euceda v. Evans*, No. 1:17-CV-256, 2017 WL 1534196, at *5 (E.D. Va. Apr. 24, 2017) (finding that removal was reasonably foreseeable where the petitioner's detention had lasted just over six months, removal would occur promptly upon completion of withholding-only proceedings, and the record reflected that he previously had been removed to Honduras in less than a week). Unlike the indicia of progress toward removal that the preceding cases demonstrate, here, the mere existence of a request for travel documents—absent

10

evidence that issuance is likely within a reasonably definite period—does not establish a significant likelihood of removal in the reasonably foreseeable future.[3]

That reasoning applies here. Respondents' supplemental response confirms that removal hinges on a nationality verification that has been pending for months, that no timeframe can be predicted, and that ICE itself cannot estimate when removal might occur. Moreover, it is unclear based on the record whether a third Travel Document Request must be made once Petitioner's nationality is confirmed, which would further continue detention indefinitely. As detention lengthens, the window of what qualifies as "reasonably foreseeable" narrows. *See Zadvydas*, 533 U.S. at 701. At this point—more than eight months into post-removal detention—an indefinite wait for an uncertain response from another country does not satisfy Respondents' burden.

Accordingly, the Court concludes that Respondents have failed to rebut Petitioner's showing. On the present record, there appears to be no significant likelihood of Petitioner's removal to China in the reasonably foreseeable future.

*3. Relief*

Having determined that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future and, thus, Petitioner's continued detention is unlawful, the Court must now consider the appropriate remedy.[4] Under *Zadvydas*, the Supreme Court concluded that if the government cannot rebut a petitioner's showing that removal is not significantly likely in the reasonably foreseeable future, continued detention is not statutorily authorized. 533 U.S. at 699

---

[3] Notably, the Declaration of Justin Richardson that was filed on February 25, 2026 (ECF No. 14, attach. 1), does not represent that Petitioner was interviewed on November 20, 2025, despite Respondents' representation in its November 17, 2025, Response that ICE "intend[ed]" to conduct such an interview (ECF No. 12 at 15).

[4] Though Respondents raise arguments regarding the due process requirements articulated in *Zadvydas* and under the Fifth Amendment, the Court need not address those issues in light of its conclusion that Petitioner has been detained in excess of six months and there appears to be no significant likelihood of Petitioner's removal in the reasonably foreseeable future. *See* ECF No. 12 at 12–19.

("Consequently, interpreting the statute to avoid a serious constitutional threat, we conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."). Consistent with that directive, courts across the country have ordered the release of individuals subjected to unlawful post-removal detention. *See, e.g., Rodriguez Romero v. Ladwig*, No. CV 25-1106, 2026 WL 321437 (M.D. La. Feb. 6, 2026); *Roble v. Bondi*, 803 F. Supp. 3d 766 (D. Minn. 2025); *Nguyen v. Hyde*, 788 F. Supp. 3d 144 (D. Mass. 2025).

Here, because Respondents have failed to demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, Petitioner's continued detention fails to comport with the due process limitations recognized in *Zadvydas*. Absent such a showing, further confinement would contravene the constitutional and statutory safeguards set forth by the Supreme Court. Accordingly, habeas relief is warranted, and Petitioner must be released from custody.

## III. RECOMMENDATION

For the reasons explained above, the Court **RECOMMENDS** that the Petition, ECF No. 1, be **GRANTED**, and that Petitioner be immediately released from custody.

## IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party. *See* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1954).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner at his address on record.

/s/
Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
February 27, 2026

13